**RICCI TYRRELL JOHNSON & GREY**
**BY: Patrick J. McStravick (NJBAR ID# 027171997)**
WILLOW RIDGE EXECUTIVE OFFICE PARK
750 ROUTE 73 SOUTH – SUITE 202B
MARLTON, NJ 08053
(856) 810-8860
pmcstravick@rtjglaw.com

ATTORNEYS FOR **Plaintiff, Atlantic Wreck Salvage, LLC**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION
## IN ADMIRALTY

| | |
|---|---|
| ATLANTIC WRECK SALVAGE, LLC<br>Plaintiff,<br><br>v.<br><br>THE WRECKED AND ABANDONED VESSEL,<br>known as the S.S. *CAROLINA*, which sank in 1918, her<br>engines, tackle, appurtenances and cargo,<br><br>*in rem*<br>Defendant. | C.A. *No.* ** |

## VERIFIED COMPLAINT IN ADMIRALTY *IN REM* AND *IN PERSONAM*

Plaintiff, Atlantic Wreck Salvage, LLC, by and through its undersigned counsel, Ricci Tyrrell Johnson & Grey, hereby brings suit *in rem* against the Defendant, the Wrecked and Abandoned Vessel known as The S.S. *CAROLINA*, which sank in 1918, her engines, tackle, appurtenances, and cargo, alleging as follows:

1. This is a case of admiralty and maritime jurisdiction stating a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure as hereinafter more fully appears. This Court has jurisdiction of this pursuant to 28 U.S.C. § 1333.

2. The Plaintiff, Atlantic Wreck Salvage, LLC (hereinafter "Atlantic Wreck"), is located at 1901 US Highway 130, 2nd Floor, North Brunswick, Middlesex County, NJ 08902.

3. Atlantic Wreck's mission is to search for, document and potentially salvage shipwrecks.

4. Atlantic Wreck is equipped with the necessary boat and tools to effectively and efficiently carry out this mission.

5. The S.S. *CAROLINA* was an unarmed passenger liner owned by the New York & Puerto Rico Steamship Company that was sunk on June 2, 1918 by the German U-Boat 151 in 250 feet of water approximately 60 nautical miles east of Atlantic City, Atlantic County, New Jersey.

6. Upon information and belief, John B. Chatterton (hereinafter "Chatterton") led an expedition during which the wreckage of the S.S. *CAROLINA* was positively identified.

7. On or about November 1, 1995, Chatterton instituted an action, captioned *John B. Chatterton v. S.S. Carolina, The Wrecked and Abandoned Vessel, etc.*, U.S. Dist. Court, Dist. Of N.J., No. 95-CV-5776-JHR, via the filing of a Complaint in Admiralty for the admiralty arrest of The S.S. *CAROLINA*.

8. On or about November 2, 1995, a Warrant of Arrest was issued on behalf of Chatterton. Chatterton was further appointed as Special Process Server to the shipwreck and the Substitute Custodian of any property recovered from the shipwreck.

9. In December, 1996, Chatterton was allowed by the Court to maintain his admiralty arrest of the shipwreck for the 1997-1998 salvage seasons and remain the Substitute Custodian of any artifacts recovered.

10. On or about July 1, 2000, Chatterton filed a Motion for Preliminary Injunction over the shipwreck requesting that the Court forbid any party from conducting salvage operations at the S.S. *CAROLINA* site without the prior authorization and assent of Chatterton.

11. Also in 2000, Joseph M. Mazraani (hereinafter "Mazraani"), founder of Atlantic Wreck, began diving at the *CAROLINA* shipwreck site.

12. Mazraani has been a certified scuba diver since 1997 and has the necessary qualifications to dive the *CAROLINA* shipwreck site.

13. In 2000, Mazraani was involved in helping Chatterton recover the purser's safe of The S.S. *CAROLINA*.

14. Since that time, upon information and belief, Chatterton has not been involved in any salvage operations at the *CAROLINA* shipwreck site.

15. Since that time, Mazraani has continued to dive the *CAROLINA* shipwreck site from various other dive boats and has recovered numerous artifacts from the wreckage, ranging from china and silverware to brass portholes and a compass.

16. All of these recovered artifacts have been catalogued, restored and preserved.

17. They have also been displayed at numerous shows and exhibits.

18. Since February 2010, Mazraani has operated as Atlantic Wreck.

19. One of Atlantic Wreck's projects is to locate and salvage the S.S. *CAROLINA*'s bridge equipment and bell.

20. Within the past year, the Atlantic Wreck team located the remnants of the ship's bridge and located the bell under heavy wreckage.

21. The salvage operation will require underwater cutting and hauling of massive chunks of steel, and should be allowed to proceed without interference from other vessels that sporadically visit the wreck.

22. Atlantic Wreck is equipped with the necessary boat and tools to effectively and efficiently salvage these unique artifacts and restore them to their original state for others to see.

23. These artifacts, as well as any other artifacts recovered pursuant to the salvage operations conducted under the jurisdiction of this Court, will be in the actual and/or constructive possession of this Court or its duly-appointed Substitute Custodian during the pendency of this action.

24. This Court has, or will have during the pendency of this action, jurisdiction *in personam* over any potential claimant or competing salvor by virtue of their contacts in this forum, the nature of the Plaintiff's action, the relationship of the potential claimant and/or salvor to the Plaintiff, the forum and the cause of action and/or the principles of jurisdiction by necessity.

25. The Court's exercise of jurisdiction over competing claimants and/or salvors is necessary to prevent irreparable injury to, or destruction of the *CAROLINA*; to allow the Plaintiff to continue to pursue its ongoing salvage operation without interference; to bring the recovered artifacts within this District; and to prevent destruction of this Court's actual and potential jurisdiction.

26. Atlantic Wreck, its agents and associates have invested substantial time, money and effort in searching for and locating the bridge equipment, bell and other artifacts of the *CAROLINA* and in initiating the physical recovery of these items.

27. Atlantic Wreck, its agents and associates are actively, voluntarily and successfully engaged in the process of reducing certain artifacts from the *CAROLINA* to the Plaintiff's exclusive custody, control, possession and dominion, as well as the natural salvaging circumstances permit, and the Plaintiff has the present ability to continue to do so during the pendency of this action.

## COUNT I: POSSESSORY AND OWNERSHIP CLAIM PURSUANT TO THE LAW OF FINDS

28. The Plaintiff incorporates by reference its allegations in Paragraphs 1 through 28 as if same were set forth herein at length.

29. Chatterton's salvage operations of the *CAROLINA* ceased in 2000 and title to the *CAROLINA* acquired by Chatterton in 1996 has now been abandoned.

30. The Plaintiff is and should be the right salvor in possession of the *CAROLINA*, and has taken such actions as are necessary to constitute dominion and control of the abandoned shipwreck.

31. As there is no extant owner of the Defendant shipwreck or her artifacts, pursuant to the maritime law of finds, Atlantic Wreck is entitled to the exclusive title, ownership and possession of the artifacts that its and its agents and associates shall salvage from the *CAROLINA* pursuant to this action and under the protection of this Court.

## COUNT II: SALVAGE AWARD CLAIM

32. The Plaintiff incorporates by reference its allegations in Paragraphs 1 through 32 as if same were set forth herein at length.

33. The Defendant shipwreck and its artifacts are subject to marine peril and is in an utterly helpless condition from which they could not be rescued without the voluntary and successful services of Atlantic Wreck, its agents and associates.

34. The Plaintiff is under no legal obligation or official duty to render salvage services to the *CAROLINA*.

35. The Plaintiff's services have been and will continue to be successful in rescuing and/or helping to rescue artifacts from the Defendant vessel in order to return the salvaged portions of the shipwreck to the stream of commerce from which they were lost.

36. The Plaintiff, by virtue of such services so performed, the private risk capital expended and the time spent and danger incurred in finding and salvaging artifacts from the CAROLINA, is entitled to a liberal and competent salvage award for such services.

## COUNT III: SALVAGE OPERATION AND INJUNCTIVE CLAIM

37. The Plaintiff incorporates by reference its allegations in Paragraphs 1 through 37 as if same were set forth herein at length.

38. The rights and efforts of the Plaintiff, the economic value and integrity of the artifacts sought, the successful recovery of lost and abandoned property at sea, and the safety of life and limb mandate that the Plaintiff be protected by the Court in maintaining exclusive dominion and control of his salvage activities on the *CAROLINA* without the interference by third parties.

39. Allowing interference with the Plaintiff's ongoing operations would substantially and irreparably injure the Plaintiff, would be inequitable, would be harmful to the public good, would constitute a significant hazard to safe and successful salvage operations, and would be contrary to a balancing of the respective interests of the parties and the comparative hardships borne.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

(a) Declare Atlantic Wreck Salvage, LLC the true, sole and exclusive owner of any items salvaged from the CAROLINA by it, its agents and associates; and

(b) In the alternative, award Atlantic Wreck Salvage, LLC a liberal salvage award in specie, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage; and

(c) Declare Atlantic Wreck Salvage, LLC as entitled to the sole and exclusive right to continue its ongoing recovery operations and to salvage, preserve and transact with any artifacts recovered without interference by any third parties, and that any and all such interference be temporarily and permanently enjoined; and

(d) That process in rem and/or quasi in rem and a Warrant of Arrest may issue in due form of law, in accordance with the practice of this Honorable Court in causes of admiralty and maritime jurisdiction against the aforesaid shipwreck and/or salvage from the Defendant vessel with notice to all persons claiming an interest in the Plaintiff's ongoing salvage operations to appear and answer this Complaint to show cause as to why the artifacts salvaged from the CAROLINA by the Plaintiff and its associates should not be:

(e) delivered to Atlantic Wreck Salvage, LLC as having full ownership, title and right to possession thereof, or

(f) alternatively, sold or appropriately disposed of in satisfaction of any judgment in favor of Atlantic Wreck for a salvage award; and

(g) that Atlantic Wreck may have such other and further relief as the justice of this cause may require.

RICCI TYRRELL JOHNSON & GREY

By: _____
Patrick J. McStravick, Esquire
Attorneys for Plaintiff,
Atlantic Wreck Salvage, LLC

Date: 5.21.14

8

{1597.00001:00108409}

**RICCI TYRRELL JOHNSON & GREY**
**BY: Patrick J. McStravick (NJBAR ID# 027171997)**
WILLOW RIDGE EXECUTIVE OFFICE PARK
750 ROUTE 73 SOUTH – SUITE 202B
MARLTON, NJ 08053
(856) 810-8860
pmcstravick@rtjglaw.com

ATTORNEYS FOR **Plaintiff, Atlantic Wreck Salvage, LLC**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**
**IN ADMIRALTY**

| | |
|---|---|
| ATLANTIC WRECK SALVAGE, LLC<br>Plaintiff,<br><br>v.<br><br>THE WRECKED AND ABANDONED VESSEL,<br>known as the S.S. *CAROLINA*, which sank in 1918, her engines, tackle, appurtenances and cargo,<br><br>*in rem*<br>Defendant. | C.A. *No.* ** |

## VERIFICATION

I, Joseph M. Mazraani, founder of Atlantic Wreck Salvage, LLC, the Plaintiff in the above-captioned admiralty action, hereby declare under oath that I have read the attached Verified Complaint in Admiralty and, to the best of my knowledge and belief, the contents thereof are true and accurate.

_____
Joseph M. Mazraani

1

{1597.00001:00102533}